John Leslie THOMPSON, Respondent,

v.

Peggy L. THOMPSON, Appellant.

No. WD 46425.

Missouri Court of Appeals,
Western District.

May 11, 1993.

Ronald J. Prenger, Jefferson City, for appellant.

Marvin Wayne Opie, Tipton, for respondent.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

Peggy L. Thompson appeals the trial court's decree dissolving her marriage to John Leslie Thompson. She contends that the trial court erred by (1) making an award of maintenance in gross and limiting the duration of maintenance, (2) ordering John Thompson to pay her for her share of the marital property in installments, (3) awarding a bank account to her although no funds remained in it, and (4) ordering John Thompson to pay only $500 in attorney's fees. We remand the case for the trial court to set aside its order of maintenance and to enter instead an order for maintenance enduring until a change deemed appropriate under § 452.370, RSMo Cum.Supp.1992, occurs. We affirm the trial court as to the payments by John Thompson, the bank account and attorney's fees.

John and Peggy Thompson married on July 15, 1983, and separated on October 17, 1991. No children were born during the marriage. Peggy Thompson has custody of a son from a previous marriage.

Peggy Thompson suffers severe depression. She has received hospital treatment for the depression four times: May 9 through May 22, 1990; June 12 through June 15, 1990; October 16 through November 5, 1991; and March 16 through April 1, 1992. Psychiatrist Jerome Greenfield treated her during these hospital stays and approximately 40 times between May 9, 1990, and May 5, 1992. His diagnosis after her last hospitalization was that she suffered bipolar affective disorder and hypertension. At the time of the dissolution hearing, Peggy Thompson was taking four prescribed medications: Prozac, Lithium, Lorazepam, and Calan SR. Greenfield believed that she would need to continue taking medicine, probably Lithium, for several years. He expected her episodes of depression to become less intense and less frequent as she aged, but he expected her to need at least one more hospital stay. He believed that she might be able to get a job, but he did not believe at the time of trial that she was stable enough to maintain a job. He did not opine how long it would be before she could maintain a job.

While married to John Thompson, Peggy Thompson worked for 16 different employ-

ers, and she typically earned minimum wage. At trial, she expressed an intention to look for work when her health permitted and when she had transportation.

At trial, she was 38–years–old and a high school graduate. Her monthly income was $234 in Aid to Families With Dependent Children (AFDC), $50 child support payment from her son's father—when he paid it—and $154 in food stamps. She also received Medicaid coverage for herself and her son. John Thompson's net monthly wage was $1,057.29, and his average net monthly expenses were $1,104.05.

Peggy Thompson received $8,843.50 and interest from her father's estate when her father died, and $27,119 in insurance proceeds. She used this money to pay some of her and John Thompson's bills and living expenses and to make a $10,000 down payment for a house in which she and John Thompson lived and a $6500 down payment for a pickup.

She and John Thompson maintained a joint checking account. During October 1991, she withdrew all of the money—about $2500—from the account.

The trial court valued John Thompson's separate property at $2225 and Peggy Thompson's separate property at $1300. It valued the marital assets at $21,579. Of this sum, the trial court awarded $14,589 to John Thompson. It awarded Peggy Thompson marital assets valued at $6990, which included the $2500 she had taken from the joint checking account. The court also ordered John Thompson to make two payments to Peggy Thompson, one for $1700 on December 1, 1992, and a second for $5500 on January 1, 1994. Concerning maintenance, the trial court ordered:

> [Peggy Thompson] is awarded the sum of $3,200.00 as maintenance in gross as follows: [John Thompson] is ordered to pay to [Peggy Thompson] the sum of $200.00 on the last day of every month for the calendar year 1992, beginning

with the month of May; and [John Thompson] is ordered to pay to [Peggy Thompson] the sum of $100.00 on the last day of every month for a total of sixteen (16) months, beginning with the month of January, 1993. This award of maintenance is non-modifiable.

Peggy Thompson owed $1714.50 in attorney's fees as of February 21, 1992. The court ordered John Thompson to pay only $500 of these fees.

■■■ Peggy Thompson contends the trial court erred in ordering maintenance in gross and in limiting it to 24 months.[1] The Supreme Court of Missouri has ruled that "maintenance 'in gross' is no longer recognized as a tool for providing economic sustenance under Section 452.335 [RSMo Cum. Supp.1992]." *Cates v. Cates*, 819 S.W.2d 731, 738 (Mo. banc 1991). Although the trial court labeled its award "maintenance in gross," the award more closely resembled an award of maintenance for a limited duration and will be treated as such for purposes of this appeal. *Klein v. Klein*, 837 S.W.2d 567, 570 (Mo.App.1992).

■■■ A trial court has much discretion in determining the amount and the duration of maintenance pursuant to § 452.335. Our review is limited to whether the trial court has abused its discretion. *Hahn v. Hahn*, 739 S.W.2d 763, 764 (Mo.App.1987). "[A] decision to limit maintenance is justified only where substantial evidence exists of an impending change in the financial condition of the parties." *Burbes v. Burbes*, 739 S.W.2d 582, 584 (Mo.App. 1987). Substantial evidence must exist supporting a reasonable expectation that such a change will occur. *Harper v. Harper*, 764 S.W.2d 480, 481 (Mo.App.1989); *Pemberton v. Pemberton*, 756 S.W.2d 660, 662 (Mo.App.1988). Maintenance should not be prospectively terminated unless the evidence indicates that the circumstances of the parties will be markedly different in

---

1. In her Point Relied On, she challenged only the duration of the maintenance—not the amount of the award. In her argument, however, she contended that the trial court should have ordered John Thompson to pay $200 a month for an indefinite period of time instead of $100 a month. We will not consider errors not raised in the point relied on, but raised for the first time in the argument portion of the brief. Berger v. Huser, 498 S.W.2d 536, 539 (Mo.1973).

the future. *Hefti v. Hefti,* 682 S.W.2d 65, 67 (Mo.App.1984). Because of the justification required for maintenance awards of limited duration, the judicial preference is for awards of maintenance of unlimited duration. *Beeman v. Beeman,* 816 S.W.2d 15, 17 (Mo.App.1991).

■ We find no evidence supporting a reasonable probability that Peggy Thompson could begin working again within two years; nor do we find evidence of any impending change or that Peggy Thompson's financial condition would be markedly different in two years. Maintenance awards cannot be based on mere speculation as to the future condition of the spouse. *Howard v. Howard,* 764 S.W.2d 169, 171 (Mo.App.1989). Such speculation constitutes an abuse of discretion. *Burbes,* 739 S.W.2d at 584.

We conclude that the trial court erred in awarding maintenance for only 24 months. We remand this case with instructions for the trial court to set aside its order of maintenance and to order instead that John Thompson pay maintenance until he asserts a request for modification and the court finds a change deemed appropriate under § 452.370.

■ Peggy Thompson also argues that the trial court erroneously ordered John Thompson to make payments to her to complete the division of marital property. She contends that these payments place her in an adverse financial condition because the payments will disqualify her for public assistance.

Peggy Thompson cannot own personal property with equity greater than $1000, excluding certain items, to be eligible for AFDC.[2] She contends that the court-ordered payments of $1700 and $5500 by John Thompson constitute personal property with equity in excess of $1000 and that the trial court should have avoided the adverse ramifications to her by ordering sale of the marital home and the pickup and immediate distribution of the proceeds.

■ Peggy Thompson cites no authority for her contention that dissolution courts must structure the division of marital property to assist a party in qualifying for public assistance. The trial court is vested with considerable discretion in dividing marital property, and we will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Dardick v. Dardick,* 670 S.W.2d 865, 869 (Mo. banc 1984). We find no abuse of discretion by the trial court, especially since Peggy Thompson would have been in the same dilemma had the court ordered a lump sum distribution. The point is without merit.

■ Peggy Thompson also asserts that the trial court erroneously awarded her the $2500 in the joint bank account because she had already spent the money. This meant, she argues, the marital property awarded to her was worth $2500 less than what it appeared. Again, we will interfere with the trial court's distribution of marital property only when the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Id.* An equal division of marital property is not necessarily a just division. *In re Marriage of Gourley,* 811 S.W.2d 13, 20 (Mo.App.1991). Peggy Thompson fails to show how she was harmed. Even without this money, she received assets and payments from John Thompson totalling more than $11,500. We do not agree that the trial court's consideration of Peggy Thompson's withdrawal of $2500 from a jointly-held checking account was an abuse of discretion.

■ Finally, Peggy Thompson claims that the trial court erred in ordering John Thompson to pay only $500 of her attorney's fees. We will not reverse an award of attorney's fees "unless the amount awarded is arbitrarily arrived at or so unreasonable as to indicate indifference and lack of proper judicial consideration." *Burden v. Burden,* 811 S.W.2d 818, 822 (Mo.App.1991). We presume the award to be correct, and the burden rests upon the complaining party to prove otherwise. *Id.* The only requirement of a trial court in

---

**2.** Section 208.010, RSMo Cum.Supp.1992; 13 CSR 40–2.030(11).

awarding attorney's fees is that its award be reasonable considering each spouse's financial position. *Eastes v. Eastes,* 590 S.W.2d 405, 409 (Mo.App.1979). The trial court did not abuse its discretion in awarding $500 in attorney's fees to Peggy Thompson in light of the financial condition of John Thompson.

The judgment of the trial court is reversed in part and affirmed in part. We remand the case for the trial court to set aside its order of maintenance and to enter an order for maintenance of $100 per month enduring until a change deemed appropriate under § 452.370 occurs. We affirm the trial court as to the payments by John Thompson, the bank account and attorney's fees.

All concur.